## PUTNAM PERLEY

*v.*

## ARCHIBALD M. CATLIN.

1. FALSE REPRESENTATIONS — *made by a third person, without authority.* If a conveyance of land is induced by false and fraudulent representations made by a third person, who was not even authorized to negotiate in reference to the subject of the conveyance, much less to make the false representations, the grantee will not be held responsible, nor will his title be affected thereby.

2. CONSIDERATION — *adequacy.* If a consideration be paid upon the conveyance of land, though it be disproportioned to the value of the land, it will still support the deed.

APPEAL from the Circuit Court of Winnebago county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

In the year 1850, Putnam Perley purchased from Catlin, the appellee, a certain parcel of ground in the city of Rockford. Catlin refusing, afterwards, to make a conveyance, Perley instituted a suit in chancery in the Circuit Court of Winnebago county, to compel the specific performance by Catlin of his agreement to convey. That cause came on for a hearing at the February term, 1858, when a decree was entered, requiring Catlin to execute a conveyance of the land to the complainant.

In the month of March following, Perley, in whose favor the decree had been rendered, conveyed the same premises to Catlin by a quit claim deed.

In March, 1860, Perley exhibited his bill in chancery in the court below, against Catlin, by which he sought to set aside and vacate the quit claim deed which he had previously executed to the defendant, alleging that there was no consideration for the conveyance, and that he was induced to execute it through the importunities of one Morrell, who was employed by Catlin for that purpose, and by threats of a criminal prosecution for an alleged attempt on his part, to commit a rape, the charge having been fraudulently set on foot by Catlin, for the purpose of effecting a release to him from the complainant, of the premises.

Catlin answered the bill, denying the material allegations, and the cause coming on to be heard, evidence was introduced by both parties, which is sufficiently set forth in the opinion of the court, and a decree was rendered, dismissing the bill. The complainant thereupon took this appeal, and assigns for error, that the Circuit Court entered a decree against him.

Messrs. T. J. TURNER, and F. C. INGALLS, for the appellant.

1.   The release of the land in question was extorted from complainant, by the use of means which so affected him that his judgment was overturned.

Not only was the complainant threatened with the disgrace of a criminal prosecution, but the parties frightened his wife also, and operated upon him through her apprehension, as well as his own.   The active agent in this transaction proceeded with great astuteness and cunning.   After his first interview with complainant, finding him resolute, he goes away, visits the woman on whom the pretended offense was charged to have been committed, comes back, and with added and practiced solemnity returns to the attack.   He paints the inevitable ruin impending upon the complainant and his family; reduces him and his wife to a condition in which they are ready to accede to anything to avert such a catastrophe. The power and force of the importunities and intimidations, the condition of the victims, produced thereby, can never be brought truthfully before a court in a record.   The court can only judge of them by the effect produced.

Means of the character here used have always been held sufficient to require the courts of equity to interfere.   It is conceived that it is hardly necessary to refer the court to authority;   the following cases are, however, referred to: *Underhill* v. *Harwood*, 10 Ves. 209; *Copis* v. *Middleton*, 2 Mad. Rep. 556; *Stillwell* v. *Williams*, 1 Jac. 280; *McArrtree* v. *Engart*, 13 Ill. 248; 1 Story's Eq., secs. 239, 246; *McDonald* v. *Nielson*, 2 Cow. 159; *Nantes* v. *Conock*, 9 Ves. 188, 189, and note 1; *Whitney* v. *Roberts*, 22 Ill. 381.

Money extorted under threats to reputation, is robbery. In *Jones' Case*, 1 Leach, 139, 2 East P. C. 714, the court said, that to constitute robbery, there was no occasion to use weapons or real violence, but that taking money from a man in such a situation as rendered him not a free man, as if a person so robbed were in fear of a conspiracy against his life or character, was such a putting in fear as would make the taking of his money under that terror, a robbery; and they referred to *Brown's Case*, (O. B. 1763). Such threat must necessarily and unavoidably create intimidation. It is equivalent to actual violence, for no violence that can be offered could excite a greater terror in the mind, or make a man sooner part with his money. *Donally's Case*, 1 Leach, 193. In *Hickman's Case*, 1 Leach, 278, 3 East P. C. 728, Mr. Justice Ashurst says, that whether the terror arises from real or expected violence to the person, or injury to the character, the law makes no kind of difference; for to most men the idea of losing their fame and reputation is equally if not more terrific than the dread of personal injury. See also *Edgerton's Case*, Russ. & Ry. 375.

2. The defendant claims he ratified the contract made by Morrell, but insists that he can avoid the representations and means used by Morrell. This cannot be done.

" If the agent makes misrepresentations, the principal is bound by them. He cannot ratify the contract, and avoid the responsibility of the representations." *Henderson* v. *Railroad Co.*, 17 Texas, 560, and authorities there cited.

In *Huguenin* v. *Basely*, 14 Ves. Jr. 289, Lord Chancellor Eldon says : " I should regret that any doubt could be entertained whether it is not competent to a court of equity to take away from third persons the benefits which they have derived from the fraud, imposition, or undue influence of others. The case of *Bridgeman* v. *Green*, 2 Ves. Sr. 627, Wilm. 58, is an express authority that it is within the reach of the principle of this court to declare, that interests so gained by third persons cannot possibly be held by them; and Lord Hardwick observes justly, that if a person could get out of reach of the doctrine and principle of this court

by giving interests to third persons, instead of reserving them to himself, it would be almost impossible ever to reach a case of fraud. There is no pretense that Green's brother, or his wife, was a party to any imposition, or had any due or undue influence over the plaintiff; but does it follow from thence, that they must keep the money? No; whoever receives it must take it tainted and affected with the undue influence and imposition."

"Let the hand receiving it be ever so chaste, if it comes through a polluted channel, the obligation of restitution will follow it."

Mr. JAMES M. WIGHT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court.

It is urged that the quit claim deed, to vacate which, this bill was exhibited, was obtained by fraudulent representations, and without consideration. It appears from the evidence in the record, that Morrell, the brother-in-law of both parties, unsolicited by either, was the active agent in procuring its execution. He went to plaintiff in error, and urged him to make the deed, for the purpose of restoring friendly relations between the families, to preserve their respectability, and end all strife. He also urged, as a reason for doing so, that the former suit in reference to the same property was not yet at an end, as defendant in error designed to remove the cause to the Supreme Court, which would increase the expense. That if he refused, witness believed defendant in error would prosecute plaintiff in error, for an assault with intent to commit a rape on a woman residing in the county, a rumor of which was then in circulation.

It appears that plaintiff in error refused at the first interview with Morrell, but on his return, after having an interview with the woman, he consented and executed the deed. But not until he informed plaintiff in error that she confirmed the truth of the rumored assault. He also assured him that he believed defendant in error would do what was right. Plaintiff

in error acted with reluctance. This conversation was had in the presence of the wife of plaintiff in error, who was deeply distressed. Witness gave the assurance that defendant in error would at least, pay his lawyer's fee in the former suit, and would, perhaps, repay him all the money he had paid to defendant in error upon the land. After the deed was executed, witness returned to Rockford and delivered the deed to defendant in error.

At the time of its delivery defendant gave to witness his note for one hundred dollars, on which he procured the money, and paid to plaintiff's attorney in the previous litigation, $80, and the remaining twenty was paid on a bill of costs in that suit for which plaintiff was liable. In the afternoon of the same day, plaintiff came to Rockford for the purpose of repossessing himself of the deed, but it had then been delivered.

This witness positively denies that this arrangement was made at the request of defendant in error. Nor is there any evidence in the record tending to support that charge in the bill, and even if false and fraudulent representations were made, which does not appear, defendant in error was not a party to, or responsible for, them. The evidence shows that plaintiff acted under excitement, and that the circumstances which surrounded him operated with considerable pressure, and that he finally yielded reluctantly. But there is no evidence that he is a man of weak mind or small capacity, but on the contrary, that his mind and business capacity are above the average of men. He appears to be fully capable of judging correctly and of acting with firmness. Nor do we discover that the deed was procured under threats of a prosecution on a groundless charge; on the contrary, the witness went and saw the woman to know whether it was true, before the deed was executed.

It is true that no money was paid as a consideration at the time the deed was delivered to Marshall. But defendant in error did pay one hundred dollars when the deed was delivered to him. This money was paid to Marshall, who was authorized to receive it by plaintiff in error. It was appropriated to

the payment of his debts, according to his directions. This money was paid and received as the consideration for the deed. It was paid on the delivery of the deed, and to plaintiff's agent, authorized to deliver the deed, and to receive the money. He received all that he had any positive assurance he would get. This consideration, although disproportioned to the value of the land, was adequate to support. the deed.

We can perceive no grounds for reversing the decree, and it must be affirmed.

*Decree affirmed.*